**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph RICHARDS, Defendant–
Appellant.**

**No. 97–3622.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1999.

Decided Jan. 7, 2000.

Kit R. Morrissey (argued), W. Charles Grace, Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for United States.

Kent R. Carlson (argued), Chicago, IL, for Joseph Richards.

Before WOOD, Jr., KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Defendant Joseph Roy Richards pleaded guilty to two counts stemming from an attempt to transport narcotics from Arizona to New York in 1997. He was sentenced to fifty-seven months imprisonment with four years supervised release and ordered to pay a $10,000 fine. In what has become a familiar refrain under the Sentencing Guidelines, Richards challenges the district court's decision to enhance his sentence two levels for obstruction of justice and four levels for organizing five or more participants in the crime. Because we find the evidence supported both enhancements, we affirm the sentence.

### I. History

The facts of the case are fully set out in the case of Richards' co-defendant, Cheryl A. Hunte, *see United States v. Hunte,* 196 F.3d 687 (7th Cir.1999), so we will recite here only those facts essential to Richards' appeal. In March 1997, Richards, who went by the name "Oscar," recruited his girlfriend, Hunte, and an acquaintance known as Luis Gonzalez to help him drive from New York to Arizona to pick up a load of marijuana. Richards supplied a minivan for the trip, and Gonzalez agreed to be the driver in exchange for seven pounds of marijuana, worth about $8,000 or $9,000.

Richards planned to stop in Tulsa, Oklahoma, pick up a third confederate and then drive on to Tucson, where he had arranged to meet the drug supplier. When they arrived in Tulsa, Richards' confederate was unavailable. Johnathan Warwick, an acquaintance of Richards, agreed to take his place on the drive to Arizona and back to New York. Throughout the trip, Richards would tell his co-conspirators of new or changed aspects of the plan, although it is unclear whether he did so as a ruse to keep them guessing or because he really did not know where the pickup and delivery would be made.

Once they arrived in Tucson, Richards made some calls from a pay phone at a convenience store. An unidentified person in a Chevy Blazer met them at the store and escorted them to a house occupied by a man, woman and an infant, who all left when Richards arrived. Several hours later, another, older man came and took the minivan, returning it loaded with marijuana. Richards asked Gonzalez and Warwick to help him carry the marijuana into the kitchen. Richards cut one bundle open to make sure it was all marijuana and extracted some buds for sampling, which the group then smoked.

Richards' brother arrived in a burgundy Nissan Maxima, which Richards intended to drive back to New York. After dropping off Richards' brother in Phoenix, Richards and Hunte drove to Tulsa in the Maxima, followed by Gonzalez and Warwick in the van. After spending the night at a motel, paid for by Richards, the foursome continued on their trip to New York. In Illinois, state police pulled the minivan over, and a search revealed the bundles of marijuana, which weighed nearly 45 kilograms, or about 100 pounds. Based on information supplied by Warwick, the police radioed ahead and were able to pull over Hunte and Richards. Richards denied they were traveling with the minivan but said they had been driving around the Midwest looking for farm equipment to buy for Richards' chicken farm in Jamaica. Richards told the trooper that he and Hunte were headed to New York, while Hunte said they were "heading up through Virginia toward Florida." Hunte and Richards were arrested. Police matched fingerprints on the marijuana to Richards, but not to Hunte.

Richards, Warwick and Gonzalez pleaded guilty to conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). Hunte pleaded not guilty, but was convicted by a jury on both counts. At Richards' sentencing on October 3, 1997, the government asked for a two-level

upward departure for obstruction of justice, pursuant to U.S. Sentencing Guidelines Manual § 3C1.1, and a four-level increase for Richards' leadership role in the crime, pursuant to § 3B1.1.

To support its request, the government called Warwick to testify. Warwick said that on March 26, 1997, while in the nursing station of the Madison County jail, Richards instructed him not to talk to police. The next day, while waiting in a holding cell before their appearance in court, Richards told both Warwick and Gonzalez to stay quiet and not implicate Richards and Hunte in the drug stop. In exchange for their silence, Warwick would get them attorneys and "put money in their books." Richards also discussed helping the two men make bond so they could flee the jurisdiction if released. To back these offers up, Richards gave the men the name and phone number of a woman in Florida whom Warwick eventually contacted. The woman, known as Marlene, sent Warwick an envelope containing a $200 money order and instructions on how to contact a lawyer. Warwick spoke with Marlene one more time and received three more letters from her, including another money order for $100. A letter attached to the money order promised, "we'll do what we say we will do."

Judge William D. Stiehl overruled the defense's objections to the four-level and two-level increases and found Richards' offense level to be twenty-three and his criminal history category to be I, resulting in a sentencing range of 46 to 57 months. Judge Stiehl ordered Richards confined for concurrent terms of 57 months imprisonment.

## II. ANALYSIS

■ Richards raises two issues on appeal, both related to the district court's imposition of sentencing enhancements. We review factual findings of the sentencing court only for clear error. *See United States v. Craig*, 178 F.3d 891, 900 (7th Cir.1999); *United States v. Gwiazdzinski*,

141 F.3d 784, 789 (7th Cir.1998). We will overturn the district court's factual findings relating to sentencing "only if our review of the record leaves us with a definite and firm conviction that a mistake has been committed." *See United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir.1996) (internal quotation marks and citations omitted).

### A. § 3C1.1 Obstructing Justice

The Sentencing Guidelines require the court to increase a defendant's sentence if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Application Note 4 provides some examples of conduct that qualifies for the obstruction enhancement, including "threatening, intimidating or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," U.S.S.G. § 3C1.1 application note 4(a), and "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (*e.g.*, 18 U.S.C. §§ 1510, 1511.)." *Id.* at (i). Section 1510 of Title 18 penalizes anyone who "willfully endeavors by means of bribery to obstruct, delay, or prevent communication of information relating to a violation of any criminal statute ..." 18 U.S.C. § 1510.

■ Richards argues that the enhancement does not apply because there was no testimony that Richards threatened Warwick with bodily harm. This argument is frivolous. The Guidelines do not require a threat of bodily harm, nor a threat of any nature. Even the application note cited above suggests "threatening" as but one example of obstruction, alongside "otherwise unlawfully influencing." Section 1510, incorporated by reference in the application note, prohibits bribing a witness with nary a mention of threat or intimidation.

Richards then asks this Court to look at each of the alleged acts of obstruction standing alone and credit an innocent explanation for each. For instance, Richards argues that telling a criminal defendant not to talk to police is sage advice, not an obstruction of justice. Warwick testified that Richards told Gonzalez and he to keep quiet and *not implicate Richards and Hunte in the drug stop.* Furthermore, according to Warwick's testimony, Richards promised the two men a reward for not implicating Richards and Hunte: the services of an attorney and money. This differs greatly from advising someone to exercise their Fifth Amendment right to remain silent. While Richards contends "there is absolutely no evidence of a *quid pro quo,*" Warwick's testimony provides just that evidence. According to evidence presented at the sentencing hearing, Judge Stiehl found that Richards "requested a co-defendant to keep quiet ... [and] supported that request with an offer, at least an implied offer, to provide counsel to the co-defendant [and] a total of about $300."

■ Incredibly, Richards does not attempt to attach an innocent explanation for the $300 sent by his confederate Marlene Cousins (also known as Marlene Fuller) to Warwick with the note "we'll do what we say we will do." Instead, he argues that no one in this day and age could be bribed for such a pittance. Only "a sum of money so large that he couldn't say no" qualifies as a bribe in Richards' world. We think not. The Guidelines and § 1510 contain no minimum bribe amount. That Warwick could be bribed cheaply might benefit Richards' pocketbook, but it does not benefit his sentence. Accordingly, it is apparent that the district court's finding is not clearly erroneous.

### B. § 3B1.1 Aggravating Role

The Guidelines require a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1. Richards mounts a two-part attack on the sentencing court's finding. First, he contends that he was not an organizer or a leader, and second, he asserts that there were only four participants.

■ Richards contends that there is "absolutely no evidence ... that [he] lead or organized anyone." Application Note 4 suggests several factors that may indicate a leadership role, including, among others, decision-making authority, the recruitment of accomplices, a right to a larger share of the proceeds, the degree of participation in planning or organizing the crime, and the degree of control over others. U.S.S.G. § 3B1.1 application note 4; *see also United States v. Emerson,* 128 F.3d 557, 562 (7th Cir.1997). The enhancement can be justified even though less than all enumerated factors are present. *See United States v. Young,* 34 F.3d 500, 508 (7th Cir.1990).

Hunte's trial produced extensive evidence of Richards' role in the crime, all of it tending to show that Richards was the organizer and leader of this operation. He proposed the scheme to Gonzalez in New York, stood to gain a greatly disproportionate share of the drugs, procured the minivan for the trip, knew where to go and selectively released information regarding the details of the trip to the other participants. He recruited Warwick in Tulsa and doled out the expense money, although he insists he meant to get reimbursed all along. In Tucson, he arranged the drug deal from his sources and directed his lackeys in the loading, unloading and testing of the drugs. To say that this amounts to "absolutely no evidence" is less than forthright. It constitutes, in fact, more than a preponderance of the evidence. Judge Stiehl's finding that Richards was an organizer of the operation is not clearly erroneous.

■ Second, Richards argues that the operation at most involved four participants: Richards, Hunte, Gonzalez and

Warwick. To earn the enhancement, the leader "must have some control, direct or indirect, over at least four other participants in the offense." *United States v. Carson*, 9 F.3d 576, 584 (7th Cir.1993). However, in this sense, we intended a broad definition of "control" to include "some kind of supervisory or organizational role with respect to those participants." *United States v. Magana*, 118 F.3d 1173, 1203 (7th Cir.1997) (emphasis deleted). To qualify as a participant, the person need only be criminally responsible for the offense but not necessarily convicted. *See* U.S.S.G. § 3B1.1 application note 1. The real question is the size of the criminal operation, not the size of the prosecution.

█ In this case, several people who participated in Arizona also would be criminally responsible, including the man whom Richards contacted to escort him to the safe house and the second man who brought the minivan back loaded with marijuana. Richards' brother also may have been responsible for procuring the chase car for their trip back. Although it is unclear what relationship Richards had with the drug suppliers and runners in Arizona, we may surmise that Richards had at least indirect control over the people he contacted in Tucson as they did what he wanted, when he wanted it and where he wanted it done. Richards directed the purchase and delivery of the marijuana and the procurement of the second automobile, all of which required the logistical coordination Richards supplied. This is sufficient to meet our broad definition of indirect control.

Richards relies on our decision in *United States v. Guyton*, 36 F.3d 655, 662 (7th Cir.1994), for the proposition that one's activities as a middleman cannot be elevated to the status of organizer by counting as co-conspirators all of the people to whom the middleman distributed drugs. In that case we held there was no evidence that the defendant controlled two people to whom he sold drugs, nor a third person who bought drugs from the first two. *See id.* We resisted an urge that would have

allowed courts and prosecutors to apply § 3B1.1(a) automatically to every drug deal on the simple premise that drugs flow in an ever broadening stream from a single grower to hundreds of users. Richards' Arizona co-conspirators stand in a very different relationship to his operation than Guyton's customers did to his. A fair amount of organization, timing and coordination was needed for Richards to consummate the drug transfer, and the co-conspirators apparently took their cues from Richards as to how and when it would be done. Although he may not have been their unquestioned superior, he was in charge of the deal, and they followed his cue. One of Guyton's customers never even met him, and the other two were merely his customers, not his co-conspirators in a drug peddling operation. Thus, we find that the ruling that Richards exercised control over five people was not clearly erroneous.

### III. CONCLUSION

Because the district court's rulings that a preponderance of the evidence supports both the two-level and four-level enhancement in Richards' sentence cannot be seen as clearly erroneous, we AFFIRM the sentence.