In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4077

United States of America,

Plaintiff-Appellee,

v.

Jeffrey Haehle,

Defendant-Appellant.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-8--Charles N. Clevert, Judge.


Argued June 5, 2000--Decided September 14, 2000


Before Easterbrook, Diane P. Wood, and Evans, Circuit
Judges.

Diane P. Wood, Circuit Judge.  Jeffrey Haehle
pleaded guilty to charges of bank fraud and money
laundering for a practice known as "property
flipping," whereby he would purchase inner city
real estate at low prices and then create sham
transactions designed to lure lenders to send
money his way. On appeal, he raises a number of
challenges to the sentence he received: 46 months
in prison, which was the top of his sentencing
range, and a restitution obligation of
approximately $1,449,000. While we disagree in
part with the district court's application of the
Sentencing Guidelines, we conclude that any
errors it may have made were harmless, and we
thus affirm Haehle's sentence.

I

Haehle's line of business was real estate and
mortgages. The casual observer might not have
realized this, however, because he did not
operate using his own name. Instead, because he
was a convicted felon and he faced a multi-
million dollar civil judgment in Illinois (a
judgment that he apparently was making some
effort not to pay), he operated solely through a
variety of corporate entities. Their names are
not important to this appeal, however, and so for
convenience we will refer only to Haehle himself.

The scheme that caused Haehle's present legal difficulties, his "property flipping," took place in the City of Milwaukee, and operated as follows. He first would purchase inner city real estate at a very low price. Then he would sell the property to a straw buyer at an inflated price. Using the straw buyer, the inflated price, and a fictional down payment, Haehle would convince a target bank to loan the straw purchaser the remaining balance due. The proceeds from the loan would first go through Haehle's loan brokering corporation; later, Haehle and the straw buyer would split up the proceeds. The scheme had only one flaw: no one was really improving any of the properties, and so the City of Milwaukee eventually condemned them, causing some 62 parcels to wind up in receiverships. Obviously, Haehle's system collapsed at that point.

One of Haehle's co-conspirators was Arlen Amundson. Along with Arlen's wife Sherri (who had better credit than either Arlen or Haehle), Arlen bought properties from Haehle using Haehle's various corporate entities as intermediaries. Either Arlen or Sherri would pay the inflated price and purport to make a substantial down payment in connection with the purchase. This made it appear that there was equity in the property when they shopped for third-party financing. In fact, Arlen never actually paid any money to Haehle. Instead, Haehle would take the loan proceeds and pay Sherri $1,500 for her participation in the scheme. Arlen received an additional $500 for preparation of the necessary documents, and Haehle and Arlen had some kind of profit-sharing arrangement. According to the government, Haehle paid Arlen a total of nearly $133,000 between March and June of 1997. Haehle also engaged in similar transactions with Alia Museitif, but he "flipped" only nine properties with Museitif.

II

As noted above, after all was said and done Haehle pleaded guilty to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. sec. 371, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. sec. 1956(h). Because U.S.S.G. sec. 2X1.1(a) states that the base offense level for conspiracy is the same as the adjusted base offense level for the underlying substantive offense, the district court computed Haehle's sentence as follows. For the bank fraud count, the court attributed a loss of $1,449,000 to Haehle, based on recent appraisals of the properties. Looking at U.S.S.G. sec. 2F1.1, the guideline for fraud and deceit offenses, this yielded a base offense level of 6

plus an increase of 11 more levels under sec. 2F1.1(b)(1)(L), or a level of 17. The court also found more than minimal planning, which required it to add another two levels under sec. 2F1.1(b)(2)(A), for a level of 19. Next, another two levels were added on pursuant to sec. 3B1.1(c) for Haehle's role as a leader or organizer, which yielded a final offense level of 21 for count 1. For count 4, the court concluded that the base offense level was 23, relying on U.S.S.G. sec. 2S1.1(a)(1), which specifies that level for someone "convicted under 18 U.S.C. sec. 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)." It then engaged in the grouping exercise required by sec. 3D1.2; because the 23 for count 4 was higher than the 21 for count 1, it took level 23 as the governing offense level. At that point, it granted Haehle a three-level decrease for acceptance of responsibility under sec. 3E1.1, which left him with an offense level of 20 for that count. With a criminal history category of II and offense level of 20 (after grouping under sec. 3D1.2), this left Haehle with a sentencing range of 37-46 months. As noted, the district court imposed a sentence at the top of that range, along with a restitution order and the usual supervised release.

III

   Haehle argues that the court made a number of errors in its application of the guidelines, which entitle him to resentencing. First, he claims that the court clearly erred in its calculation of the loss for purposes of sec. 2F1.1(b)(1), principally because Judge Clevert used a different methodology and different data than Judge Adelman had used in Arlen Amundson's sentencing hearing. Second, he asserts that the court should not have found that he was an organizer or leader under sec. 3B1.1(c). Finally, he claims that the court should not have imposed the base offense level of 23 for his money laundering claim, because he was charged with conspiracy to commit money laundering in violation of 18 U.S.C. sec. 1956(h), not one of the offenses listed in sec. 2S1.1(a) (i.e., sec.sec. 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)). We consider these arguments in turn.


   A.   Loss Calculation for sec. 2F1.1(b)(1)

   When Arlen Amundson reached the sentencing phase of his case, Judge Adelman calculated the amount of loss caused by the scheme by taking the value of the properties and subtracting that from the aggregate loan proceeds. This yielded the estimated scope of the fraud perpetrated against the lenders. Judge Adelman then added in various

administrative costs, and he finally gave Arlen a 1/3 deduction to reflect the fact that he was involved in only 40 of the 60 or so transactions. At that time, the best evidence available for the value of the properties was their 1996 assessed values, which were then adjusted by 5% to reflect 1997 value. This produced a net loss after all adjustments of $450,000 for Haehle after the 33% discount, or a total of $675,000 in value.

By the time Haehle's own sentencing hearing took place, newer appraisals of the value of the properties were available (in large part because the government went out and got them after Arlen's hearing). Information before the court showed that the outstanding loan balances were $2.7 million; that all the loans were in default; that the City of Milwaukee had suffered $500,000 in expenses because of its receivership; and that the present value of the property was $1.8 million (a number that was generous to Haehle, as other evidence indicated a value of only $1.3 million). This produced approximately $1.4 million in loss, as indicated earlier.

Haehle pitches his argument on the fact that Judge Clevert used different figures for the loss calculation than Judge Adelman had used. This is unfair, in his view, given the undisputed fact that both were on trial for exactly the same conduct. Unfair it may seem, but this is not the kind of problem that undermines an otherwise valid calculation of loss under the sentencing guidelines. We have often held that co-defendants have no enforceable right to have sentences that are precisely congruent with one another. See, e.g., United States v. Dillard, 43 F.3d 299, 311 (7th Cir. 1994); see also United States v. McMutuary, 217 F.3d 477, 490 (7th Cir. 2000). The only thing that matters is that the sentence complies with the guidelines, and Haehle's did.

We note that Haehle has not argued that the district court erred in applying sec. 2F1.1, the guideline for fraud and deceit crimes, rather than sec. 2X1.1, the guideline for conspiracy crimes. This is probably sensible, as the ultimate result (a base offense level of 17) would probably have been the same. Looking at U.S.S.G. sec. 2X1.1(a), we see that the base offense level for a conspiracy is the same as the level for the substantive offense, after adjustments are made for specific offense characteristics. Section 2X1.1(b)(2) then instructs the court to subtract three levels, unless the defendant or a co-conspirator has completed all the acts the conspirators believed necessary for the successful completion of the substantive offense. On this record, with some 62 completed transactions, it seems inevitable that

the district court would have made such a finding, and thus that the offense level would have remained just where the judge put it, at 17.

B. Organizer Enhancement, sec. 3B1.1(c)

Also looking at the bank fraud count, the court decided that Haehle had been an organizer or leader, and thus that two levels had to be added on under sec. 3B1.1(c). Haehle complains about this as well. The government, however, argues that he forfeited this objection during the sentencing proceedings, and that the applicable standard of review is therefore plain error under Fed. R. Crim. P. 52(b). We agree that Haehle at least forfeited his argument--waiver is also conceivable, but as the government does not argue this, we do not consider it.

During sentencing, Haehle's lawyer made the following statement to the court:
I said certain things to Mr. Haehle that he's agreed with that I can proffer to the Court at this time. Clearly under the law he had a role in the offense and he acknowledges that. That's going to increase the level. That the law indicates that someone who has done the kind of things that Mr. Haehle has admitted to doing will most assuredly run the risk of having additional points added to the base offense level. And he recognizes that.
Sent. Tr. at 42-43. Haehle tries to avoid the force of this statement by suggesting that he waived only an objection to the increase under sec. 2F1.1(b)(2)(A) for more than minimal planning, but the record does not support that view. Instead, it reveals that just after the statement excerpted above, Haehle's lawyer also discussed the minimal planning adjustment. Id. at 43. Later on, Judge Clevert specifically said that he "construe[d] the defense position as withdrawal of objections to the points awarded for more than minimal planning and role in the offense." Id. at 52. Haehle never objected to this characterization, nor did he try to clarify that he meant to concede only the "more than minimal planning" point.

Assuming generously that Haehle merely forfeited the point, our review is for plain error only. We see none here. The factual record in the Pre-Sentencing Report indicates that Haehle was the person who came up with the plan. He admitted at sentencing that "the primary responsibility for going out and securing the properties rested on [him]." Id. at 33. That is certainly not the stuff of plain error (or, indeed, error of any kind).

C.  Base Offense Level 23 for Money Laundering

We come, then, to the most troublesome part of the district court's decision: its decision to assign a base offense level of 23 for Haehle's offense of conspiring to launder money. The statute under which he was convicted was 18 U.S.C. sec. 1956(h), which reads as follows:

Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

Importantly, as we shall see, this is a special conspiracy rule for money laundering, not the general conspiracy statute found in 18 U.S.C. sec. 371, and it is a conspiracy statute in which Congress has given explicit instructions about sentencing.

As was proper under U.S.S.G. sec. 2X1.1(a), the guideline for conspiracy, the court turned to the guidelines for the substantive offense that Haehle was charged with conspiring to commit, namely, the money laundering guideline sec. 2S1.1. That guideline provides as follows, in relevant part:

(a) Base Offense Level:

(1)  23, if convicted under 18 U.S.C. sec. 1956(a)(1) (A), (a)(2)(A), or (a)(3)(A);

(2)  20, otherwise.

(b) Specific Offense Characteristics

* * *

(2)  If the value of the funds exceeded $100,000, increase the offense level as follows:

* * *

(F)  More than $1,000,000      add 5

(G)  More than $2,000,000      add 6

Haehle objected to the court's use of the level 23 in the district court, so the issue is properly before us. In addition, contrary to the government's argument, he is presenting a pure question of interpretation of the guidelines, and our review is therefore de novo. See United States v. Mancillas, 183 F.3d 682, 709 (7th Cir. 1999); United States v. Yusuff, 96 F.3d 982, 989 (7th Cir. 1996).

Haehle's argument is simple--but in the end, too simple, as we will see. He contends that the use of the level 23 was wrong because he pleaded guilty to a violation of sec. 1956(h), not sec. 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A). Because sec. 2S1.1(a)(1) identifies very specifically the three offenses that give rise to the base level 23, and sec. 2S1.1(a)(2) specifies a level 20 "otherwise," Haehle reasons that he should have received a level 20 for his crime. After grouping, that would have made his conviction on count 1 the higher offense, because that was a level 21. He then believes that the three-level acceptance of responsibility adjustment would have left him with a level of 18 and a guideline range of 30-37 months.

Suppose, however, that Haehle is correct on the first of his points, and the court should have used a base offense level of 20. Haehle has overlooked the fact that sec. 2S1.1, like sec. 2F1.1, requires increases in the base level according to a chart that lists the value of the funds in question. Here, that value was approximately $1.5 million, which requires an increase of 5 levels under sec. 2S1.1(b)(2)(F). That puts him at a level 25, or a level 22 after a three level downward adjustment for acceptance of responsibility. Once again, the requirement in sec. 2X1.1(b)(2) that the substantive offense level should be reduced by three for uncompleted conspiracies would not apply, given the extensive evidence that Haehle and his co-conspirator in fact did successfully complete all the acts they believed necessary for the successful completion of their scheme. Because the government did not take a cross-appeal, Haehle is not at risk of receiving a higher sentence. We need only hold that any error the court may have made in selecting the base level 23 and in failing to make a specific offense characteristic adjustment was harmless.

It is also not clear to us that the choice of the level 23 was an obvious error, though we leave this question for another day. Section 2S1.1(a)(1) requires the higher base level of 23 for the offenses that involve intent under the money laundering statute, and it leaves the concealment offenses of sec. 1956(a)(1)(B), (a)(2)(B), and (a)(3)(B) and (C) at the lower base level of 20. The Sentencing Commission may have thought that money launderers who act with "the intent to promote the carrying on of specified unlawful activity," as sec. 1956(a)(1)(A)(i) puts it, required a more severe sentence than those who acted knowing that the transaction was designed to conceal or disguise the nature of the funds, or who try to avoid a

reporting requirement. From that point of view, sec. 2S1.1(a)(1) may therefore be directed to any offenses for which the sentence is determined according to (a)(1)(A), (a)(2)(A), or (a)(3)(A). Looking at sec. 1956(h), as we did earlier, we see that persons who conspire to commit any offense defined in sec.sec. 1956 or 1957 "shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." So, for a person who conspires to violate sec. 1956(a)(1)(A), the sentence under sec. 1956(h) must be the same as for the person who commits the substantive offense. For a person who conspires to violate sec. 1956(a)(1) (B), the sentence follows that substantive offense. See United States v. Monem, 104 F.3d 905, 908 (7th Cir. 1997) (holding that 23 is the correct base offense level for both a substantive violation of sec. 1956(a)(1)(A) and conspiracy to violate sec. 1956(a)(1)(A)); United States v. Acanda, 19 F.3d 616, 618-20 (11th Cir. 1994) (same); United States v. Restrepo, 936 F.2d 661, 665 (2d Cir. 1991) (same). Under this "derivative" view of the sentence that applies to sec. 1956(h) violators, the base level under sec. 2S1.1(a) will depend on which substantive offense underlay the conspiracy. Although it is unclear which part of the money laundering statute the government had in mind when charging Haehle with conspiracy to launder money under sec. 1956(h), it is possible that not only should the district court have begun with level 23, but also that another 5 levels should have been added on to that one.

Either way, our basic point remains the same. Haehle cannot show that any error in working from the level 23 was harmful to him. Indeed, he may have gotten a substantial break. We therefore Affirm the sentence imposed by the district court.