In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3104

United States of America,

Plaintiff-Appellee,

v.

Nelson O. Mijangos,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:00CR010-001--John C. Shabaz, Chief Judge.

Argued January 30, 2001--Decided February 14, 2001

   Before Flaum, Chief Judge, and Ripple and Rovner,
Circuit Judges.

   Flaum, Chief Judge.  Nelson Mijangos pleaded
guilty to and was convicted of transporting
counterfeit securities in violation of 18 U.S.C.
sec. 2314 and 18 U.S.C. sec. 2, and was sentenced
to 46 months imprisonment. Mijangos now appeals,
claiming that the district court erred when it
applied a four-level upward adjustment under
U.S.S.G. sec. 3B1.1(a) because he was a "leader"
or "organizer" of the check-cashing scheme. For
the reasons stated herein, we affirm.

I.  BACKGROUND

   Mijangos was a member of a criminal enterprise
that recruited illegal immigrants to cash
counterfeit checks in various states, including
Wisconsin. Mijangos, who lived in Southern
California and used his home as his base of
operations, dispatched teams of illegal
immigrants, each headed by a group leader,
throughout the United States to cash counterfeit
corporate checks. One such team was arrested on
January 29, 1999 in Madison, Wisconsin. On that
day, Robinson Valencia, Gabriel Lopez, Marvin
Rodriguez, and Pablo Guerrero were arrested
trying to pass counterfeit "Johnson Controls
Dividend" checks to a drive-through teller at the
Firstar Bank in Madison. During a search of the
men's car, the police discovered a receipt for a
nearby hotel room. The police went to the hotel,
obtained consent to search the room,/1 and found
false identification documents, almost $5000 in

cash, and ten envelopes containing counterfeit "Johnson Controls Dividend" checks with a face value of more than $40,000. Also present in the room were seven persons, ostensibly involved in the check-cashing scheme, each of whom was arrested and ultimately prosecuted or pleaded guilty.

Four of the co-conspirators, including Valencia (one of the group leaders), identified Mijangos to a federal agent as the source of the counterfeit checks. Valencia told the agent that Mijangos provided false identification cards and checks to Valencia's group and then directed them to travel to Alabama, Rhode Island, and Wisconsin to cash the checks on certain days at grocery stores, retail stores, check-cashing establishments, pawn shops, and banks. Valencia also told the agent that the person cashing the counterfeit check received fifty percent of the face value of the check and then gave the remaining amount to his group leader. The group leader then took his share and sent the rest to Mijangos. According to phone records of some of the scheme's participants, Mijangos was in frequent contact with the groups via telephone.

On February 2, 2000, a federal grand jury returned a three-count indictment against Mijangos. On May 25, 2000, Mijangos pleaded guilty to Count III--interstate transportation of counterfeit securities in violation of 18 U.S.C. sec. 2314 and 18 U.S.C. sec. 2. The Probation Office prepared a Presentence Report ("PSR"), which stated that Mijangos had provided false identification and counterfeit checks to his group leaders, and also instructed them as to the locations and times to cash the checks. The PSR recommended that Mijangos receive a four-level upward adjustment under U.S.S.G. sec. 3B1.1 for his role as an organizer or leader of the scheme. Mijangos did not object to this recommendation. Based on the recommendations contained in the PSR, the district court on August 9, 2000 sentenced Mijangos to 46 months imprisonment, the upper limit of the sentencing range. In imposing this sentence, the district court noted the length, extent, and severity of Mijangos's involvement in "this far-flung, almost nationwide scheme." The court went on to state that, considering "the numerous areas in which the defendant was engaged in this serious criminal and fraudulent conduct, . . . [a] sentence at the top of the guideline range is necessary to hold the defendant accountable for his credible (sic) conduct."

II. DISCUSSION

Before we can decide the merits of Mijangos's

appeal, we must first determine whether or not we are able to reach those merits. The government presents two arguments as to why we may not. Citing United States v. Perez, 43 F.3d 1131, 1135-36 (7th Cir. 1994), the government first argues that Mijangos waived any appeal of his sentence because he failed to object to the recommended adjustment contained in the PSR, and never objected when the court imposed its sentence. We disagree. Such a failure to object, in this instance, involves forfeiture and not waiver. Although waiver and forfeiture are related doctrines, waiver occurs when a defendant intentionally relinquishes or abandons a known right, whereas forfeiture occurs when a defendant fails to timely assert his rights. See United States v. Harris, 230 F.3d 1054, 1058 (7th Cir. 2000); United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000); Perez, 43 F.3d at 1135. Forfeiture of a right does not extinguish the right to raise the issue on appeal. See Harris, 230 F.3d at 1058. In the case of forfeiture--as here--we apply a plain error standard in reviewing the district court's decision to assess an upward adjustment under sec. 3B1.1. See United States v. Haehle, 227 F.3d 857, 861 (7th Cir. 2000).

Additionally, the government contends that this court lacks jurisdiction to consider Mijangos's appeal because the district court sentenced him within the applicable guideline range. See United States v. Hardy, 101 F.3d 1210, 1212 (7th Cir. 1996). This court's jurisdiction to review sentencing determinations is limited to those grounds enumerated in 18 U.S.C. sec. 3742(a),/2 see United States v. Coe, 220 F.3d 573, 582 (7th Cir. 2000), and Mijangos has not clearly specified the jurisdictional basis for his appeal. As pointed out by the government, this court will not review a sentence imposed within the guideline range "[a]bsent an error of law or misapplication of the guidelines," United States v. Solis, 923 F.2d 548, 551 (7th Cir. 1991), and Mijangos did not articulate any legal error. Yet, giving Mijangos's brief a liberal construction, we read Mijangos to be asserting a challenge to a sentence adjustment based on unsupported facts. In his initial brief, Mijangos claims that if the district court had not concluded that defendant was "the" leader rather than "a" leader, "the court would have had a basis to sentence Mijangos at less than the high end of the sentencing range." Mijangos clarifies this argument in his reply brief, suggesting that his appeal is reviewable under sec. 3742 (a)(1) because the district court violated the law when it sentenced him based on "unfounded facts." We have stated previously that this sort of contention is sufficient to confer jurisdiction. See United

States v. Ross, 905 F.2d 1050, 1054 n.4 (7th Cir. 1990) (stating that appellate review is preserved under sec. 3742(a)(1) where the defendant demonstrates grave doubts as to the veracity of the information and that the court relied on that false information in determining the sentence); see also United States v. Miller, 891 F.2d 1265, 1270 (7th Cir. 1989) (finding that this court has jurisdiction under sec. 3742(a)(2) where defendant argues that the district court's denial of a downward adjustment resulted from an incorrect application of the Guidelines). Thus, we will construe Mijangos's argument as an attack on the factual support underlying the district court's decision to adjust upward Mijangos's sentence by four levels.

Proceeding to the merits, Mijangos's claim is that the district court erred when it increased his total offense level four points for being a "leader" under U.S.S.G. sec. 3B1.1 based on "unfounded facts." The applicability of sec. 3B1.1 is a question of fact that this court reviews for clear error. United States v. Vivit, 214 F.3d 908, 921 (7th Cir. 2000). Guideline sec. 3B1.1(a) permits a four-level adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." This means that the defendant "may simply have organized or in some way directed" another member of the conspiracy. United States v. Mustread, 42 F.3d 1097, 1104 (7th Cir. 1994). We have held that an upward adjustment under sec. 3B1.1 is warranted for each leader in the conspiracy, see United States v. McClinton, 135 F.3d 1178, 1191 (7th Cir. 1998); United States v. Miller, 962 F.2d 739, 745 (7th Cir. 1992), and the Sentencing Guidelines recognize that more than one person may qualify as a leader or organizer, see U.S.S.G. sec. 3B1.1(a), commentary at 4; see also United States v. Golden, 954 F.2d 1413, 1419 (7th Cir. 1992); United States v. Ramos, 932 F.2d 611, 619 (7th Cir. 1991). Furthermore, an upward adjustment under sec. 3B1.1 applies to those defendants whose "relative responsibility" for the crime exceeds that of their cohorts. United States v. Morgano, 39 F.3d 1358, 1379 (7th Cir. 1994). Such is the case here. Indeed, Mijangos admits that "[t]here is no dispute on this record that [he] was a leader," and does not dispute that there were at least five participants in his scheme. Thus he is eligible for a sec. 3B1.1 adjustment regardless of others' roles in the crime.

Moreover, to determine whether a defendant is an organizer or a leader, this court considers "the defendant's exercise of decision-making authority, the nature of his participation in

committing the crime, his recruitment of accomplices, his claimed right to a larger share of the criminal proceeds, the extent of his participation in planning or organizing the crime, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Vivit, 214 F.3d at 922 (quoting United States v. Sierra, 188 F.3d 798, 803-04 (7th Cir. 1999)); see also U.S.S.G. sec. 3B1.1, commentary at 4. This court weighs these factors "in light of the Guidelines' intent to punish with greater severity leaders and organizers of criminal activity." Sierra, 188 F.3d at 804.

While we note that the government offers little, if any, factual support for its contention that the district court properly sentenced Mijangos as a leader, our own independent review of the record supports the district court's conclusion. Specifically, the PSR, on which the district court relied in sentencing the appellant, discloses that Mijangos orchestrated his scheme by recruiting group leaders, which included Valencia and others, to entice newly arrived illegal immigrants into cashing counterfeit checks. Although everyone profited from this scheme, Valencia told the federal agent that Mijangos received the bulk of the profits. In addition, as set forth in the PSR, Mijangos: (1) provided false identification and counterfeit checks to his group leaders; (2) instructed the groups to go to various cities to cash the checks; (3) told the group leaders to cash the checks only on certain days and at particular types of stores, banks and pawn shops; (4) provided bond money when check-cashers were arrested; and (5) frequently contacted the leaders and other participants after they had arrived in a state to pass the fake checks. Thus, the record demonstrates that Mijangos played an active role in organizing and perpetuating the scam.

III.  CONCLUSION

The evidence supports the district court's conclusion that Mijangos was "the leader of this multi-state counterfeit check cashing scheme, [who] recruited numerous others to travel and cash checks while he collected half the proceeds." Thus, for the foregoing reasons, we Affirm the decision of the district court.

FOOTNOTES

/1 The scope of the consent to search was the subject of a previous appeal. See United States v. Melgar, 227 F.3d 1038 (7th Cir. 2000).

/2 18 U.S.C. sec. 3742(a) provides that a defendant may appeal his sentence if it:

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable range to the extent that the sentence includes a greater fine or term of imprisonment . . . than the maximum established in the guideline range . . .; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.