**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenroy CAMPBELL, Defendant–Appellant.**

**No. 00–1315.**

United States Court of Appeals, Seventh Circuit.

Argued April 24, 2001.

Decided May 22, 2001.

Before POSNER, EVANS, WILLIAMS, Circuit Judges.

ORDER

Kenroy Campbell pleaded guilty to one count of conspiracy to import cocaine, 21 U.S.C. §§ 963, 952(a), and was sentenced to 90 months in prison followed by four years of supervised release. Campbell appeals, arguing that the district court erred in increasing his offense level by four based on his role as a leader or organizer of the conspiracy. U.S.S.G. § 3B1.1(a). We affirm.

## I.

Campbell admitted the following facts in his plea agreement and at sentencing. In the summer of 1998, Campbell, a Jamaican citizen illegally residing in the United States, hired Cortez Rhodes, one of his co-defendants, to smuggle cocaine from Jamaica by ingesting cocaine-filled pellets. After Rhodes returned from Jamaica and successfully completed his mission by excreting the pellets at Campbell's Des Plaines apartment, Campbell asked Rhodes to recruit other couriers. Rhodes first approached Nicole Williams, who agreed to make the Jamaica trip. Rhodes introduced her to Campbell, who instructed Williams to swallow whole grapes to test her ability to ingest cocaine-filled pellets.

Rhodes made travel arrangements for Williams' first trip to Jamaica in early September 1998. Campbell drove Williams to a travel agency and gave her money to purchase her plane ticket. When Williams arrived in Jamaica, she was met and escorted during her stay by Campbell's Jamaican contact and co-conspirator, Chris, who provided her with 64 cocaine-filled pellets to ingest the day prior to her departure for Chicago. Campbell and Smith met Williams at O'Hare Airport and drove her to Campbell's apartment, where she excreted the pellets. Campbell took the cocaine and paid Williams $1,300. Williams agreed to make a second trip, funded by Campbell, later that month.

Meanwhile, Rhodes also recruited Yushica Thomas and Socrates Rodriguez. After they passed the "grape test," Campbell gave Thomas cash and arranged for her to purchase plane tickets for herself and Rodriguez. On September 29, 1998, Campbell and Smith drove Williams, Thomas and Rodriguez to the airport for their flight to Jamaica. During the ride, Campbell informed the three about their mission to import cocaine and gave them instructions on how to respond to possible intervention by law enforcement authorities. Chris met the three couriers in Jamaica, paid for their hotel room and escorted them during their stay. The day prior to their departure, Chris distributed among the three couriers 150 pellets, totaling approximately 1.5 kilograms of cocaine, to ingest and deliver to Campbell in Chicago. After Williams, Thomas, and Rodriguez failed to meet Campbell as planned upon their return to O'Hare, Campbell called Rhodes, who informed him that the three had been arrested. Campbell immediately terminated service to the cell phone he used to contact Rhodes and fled to Jamaica for one month.

Following his return to Chicago in December 1998, Campbell hired Jason Smith, a new courier, to travel to Florida to pick up cocaine that Campbell had arranged to import from Jamaica. Smith suffered the same fate as his predecessors, however, when Florida authorities arrested him with 400 grams of cocaine destined for Campbell. Faced with depleted ranks of couriers, Campbell turned to John Block to boost recruitment. In February 1999, Block introduced Campbell to Devin Truesdell, who in turn recruited Quentin Handy to travel to Jamaica. After Truesdell and Handy passed the grape test, Campbell bought them plane tickets, rented them a motel room near O'Hare the night before their flight, drove them to the airport, gave them cash, and instructed them how to respond to customs agents on returning to the United States. Chris met the two couriers in Jamaica, escorted them during their stay, and provided them with cocaine pellets weighing more than 1.18 kilograms. Customs agents in Chicago arrested Truesdell and Handy after discovering that the two were carrying cocaine.

Campbell again fled to Jamaica when he learned that his couriers had been arrested, but in April 1999 he too was arrested while traveling through the Bahamas on his way to Miami. After Campbell pled guilty, the probation officer recommended in the presentence investigation report ("PSR") a four-level upward adjustment in Campbell's offense level based on his role as a leader or organizer of a criminal activity that involved five or more participants, U.S.S.G. § 3B1.1(a), and a three-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1. In his objections to the PSR and at sentencing, Campbell admitted the facts set forth in the PSR, but argued that they were insufficient to establish that he had been a leader or organizer of the conspiracy. Campbell also filed a *pro se* motion for a downward departure, which he later withdrew on the advice of counsel.

At sentencing, without expressly adopting the PSR findings, the district court found that the evidence at Rhodes' trial[1] and Campbell's admissions in connection with his guilty plea established that Campbell was a leader or organizer of the conspiracy, insofar as he had "organized the U.S. side of this operation." The court listed Rhodes, Williams, Thomas, Rodriguez, Hardy and Truesdell as the other individuals involved in Campbell's conspiracy. Accordingly, the district court increased Campbell's offense level by four levels, reduced the offense level by three for acceptance of responsibility, and sentenced him to 90 months in prison, near the low end of the guideline range.

## II.

Section 3B1.1(a) permits the district court to increase a defendant's offense level by four levels based on a finding that the defendant was a leader or organizer of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S .G. § 3B1.1(a). Application Note 4 states that more than one person may qualify as a leader or organizer, and instructs the sentencing court to take into consideration, when applying § 3B1.1(a), the following factors: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4). The district court is to weigh these factors "in light of the Guidelines' intent to punish with greater severity leaders and organizers of criminal activity," *United States v. Sierra,* 188 F.3d 798, 804 (7th Cir.1999), and may apply the upward adjustment even though not all seven factors are present, *United States v. Richards,* 198 F.3d 1029, 1033 (7th Cir.2000). This court reviews for clear error the district court's factual determination that a defendant was a leader or organizer, *see United States v. Mijangos,* 240 F.3d 601, 604 (7th Cir.2001), and its interpretation of the guidelines *de novo, United States v. Emerson,* 128 F.3d 557, 562 (7th Cir.1997).

**1.** A jury found Rhodes guilty of one count of conspiracy to import cocaine, 21 U.S.C. §§ 963, 952(a), and one count of importing 1.5 kilograms of cocaine, 21 U.S.C. § 952(a). Finding that Rhodes was a manager or supervisor based on his role as a "middleman" between Campbell and the couriers, Judge Gottschall increased his offense level by three pursuant to U.S.S.G. § 3B1.1(b), and by an additional two levels for obstruction of justice, U.S.S.G. § 3C1.1. The court sentenced him to 108 months in prison, five years of supervised release, 200 hours of community service, and a $1,000 fine. Rhodes is not a party to this appeal.

■ At sentencing, the district court stated that Campbell "knew what was going on and was working with Rhodes who was recruiting Williams, Thomas, Rodriguez, Hardy and Truesdale [sic]. That's five people. That's all you need to be a leader and organizer." The district court went on to find that the evidence established that Campbell "organized the U.S. side of this operation," involving at least five people, which was "all the law requires" for the conclusion that Campbell was a leader or organizer under § 3B1.1(a). Although Campbell did not object to these conclusions at the time, he now argues that they evidence the district court's misapplication of § 3B1.1(a). While Campbell concedes—as he must in light of his admissions in the plea agreement and at sentencing—that he "acted as a facilitator, a courier, and a conduit for funds," and that he made travel arrangements, transferred funds, and provided transportation, he argues that these facts establish that, at most, he was a manager or supervisor under § 3B1.1(b), and that the district court made an error of law in applying § 3B1.1(a) without making findings necessary to support its decision.

■ Campbell's argument borders on the frivolous. Unlike the cases on which Campbell relies, in which courts failed altogether to identify which participants the defendant had led, organized or controlled, the district court here gave a summary of Campbell's leadership role and named Rhodes, Williams, Thomas, Hardy, Rodriguez, and Truesdell as the other participants in the cocaine conspiracy led by Campbell. *Cf. United States v. Patel*, 131 F.3d 1195, 1202–03 (7th Cir.1997) (remanding where district court neither adopted PSR nor made independent findings that defendant controlled another participant in criminal activity); *United States v. Jewel*, 947 F.2d 224, 235–36 (7th Cir.1991) (remanding where district court failed to identify other participants each defendant

had supervised). Thus, the district court did not make an error of law in applying § 3B1.1(a).

Furthermore, the facts admitted by Campbell in the plea agreement, and once again at sentencing, demonstrate that the district court's finding that Campbell was a leader or organizer was not clearly erroneous. Relative to the other participants in this scheme to import cocaine, Campbell's actions demonstrated that he held the greatest responsibility for the operation of the scheme. *See United States v. Morgano*, 39 F.3d 1358, 1379 (7th Cir.1994) (evidence that defendant's relative responsibility exceeded that of cohorts supported § 3B1.1(a) increase). He recruited Rhodes to import cocaine and delegated to Rhodes and Block the task of recruiting other couriers into the organization. *Mijangos*, 240 F.3d at 605 (evidence that defendant recruited "group leaders" who recruited illegal immigrants for check-cashing scheme supported finding that defendant was a leader or organizer). Campbell planned, arranged, and funded the couriers' trips to Jamaica, shepherded them to and from the airport, and gave them instructions on how to handle possible confrontations with authorities. *See Richards*, 198 F.3d at 1033 (four-level increase proper where defendant organized couriers' trips and gave them money for expenses). He determined, by conducting the grape test, whether the couriers were qualified to perform their mission. He opened cell phone accounts in a friend's name in order to communicate with Rhodes and the other couriers, and terminated the accounts when the couriers were arrested. These facts demonstrate that Campbell exhibited decision-making authority and exercised the greatest degree of control over other participants, supporting a four-level increase in his offense level pursuant to § 3B1.1(a). *See United States v. Payne*, 226 F.3d 792, 798 (7th Cir.2000)

544

(§ 3B1.1(a) increase well-supported by evidence that defendant directed actions of others in cocaine conspiracy).

■ The absence of evidence about the extent to which Campbell profited from the scheme does not undermine the district court's determination that he was a leader or organizer. *See Emerson,* 128 F.3d at 562 (all seven factors listed in Application Note 4 need not be present for court to apply four-level adjustment). Although Campbell argues that a true leader or organizer of a scheme to import kilogram quantities of cocaine "would receive the lion's share of the elicit [sic] gains," he does not provide any authority to indicate that such a finding is mandatory under § 3B1.1(a). *Cf. Sierra,* 188 F.3d at 804 (affirming conclusion that defendant was leader or organizer without reference to amount of profits he received). Furthermore, Campbell's direct dealings with his Jamaican supplier, Chris, and his receipt of the imported cocaine, permit the inference that indeed Campbell was reaping the "lion's share" of the profits. *Cf. Mijangos,* 240 F.3d at 605 (participants in check-cashing scheme gave proceeds to group leaders who then gave the money to leader/organizer defendant). Presented with all of the evidence in the record that Campbell, relative to all the other participants, exercised the greatest degree of authority, organization and control over the scheme and its participants, the district court's finding that Campbell was a leader or organizer pursuant to § 3B1.1(a) was not clearly erroneous. Accordingly, the judgment of the district court is

AFFIRMED.