**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alex SIERRA, Defendant–Appellant.**

**No. 98–2733.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1999.

Decided Aug. 13, 1999.

Diane MacArthur (argued), Office of the U.S. Atty., Chicago, IL, for United States.

Nathan Diamond-Falk (argued), Chicago, IL, for Sierra.

Before BAUER, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

At age 29, Alex Sierra had some significant achievements. For the last five years he had been a Chicago police officer. After graduating from high school he completed 125 hours of college credit. He then received police academy training. He was always gainfully employed as an adult,

including two years as a hospital security officer before joining the police force. During that time he was a citizenship instructor at the Chicago Boys and Girls Club. He worked as a family educator, was a volunteer at Inner City Impact, and was a football and baseball coach. Then he threw it all away. One night Sierra used his police badge to enable him and two teenage friends to enter a retail store (after closing) and steal money and fireworks while pretending to make an official seizure of the illegal merchandise. On the eve of trial, after his two young friends pleaded guilty and agreed to testify, Sierra also pleaded guilty to conspiracy to commit robbery. The district court sentenced him to 120 months in prison. He appeals his sentence, arguing that he was not an organizer or leader of the conspiracy, that he did not abuse a position of trust, and that he accepted full responsibility for his allegedly minor role in the theft. We affirm the district court.

## I.

On June 30, 1994, Officer Sierra—a five-year veteran of the Chicago police force—and two teenage friends decided to steal some fireworks which were being sold illegally from a Tiger Super Food store in Chicago, Illinois. Around 9:30 p.m., Sierra drove Giovanni Lozada and Gilberto Quinones to the store just as it was closing. Sierra sent Lozada into the store to ask the owner, Iyad Daoud, whether he had any fireworks for sale. After Lozada saw the fireworks, he went outside where Sierra and Quinones were waiting and confirmed that the store had the goods. The three then went to the now-locked entrance of the store where Sierra flashed his badge through the glass door and shouted "police." Assuming that the three were policemen, Daoud admitted them into the store. Sierra told Daoud that he was under arrest for selling fireworks, advised him of his *Miranda* rights, and ordered his friends to handcuff him. Along with $800 worth of fireworks, someone took about

$700 from the cash box. After transferring the goods to Sierra's truck, Sierra removed the handcuffs from Daoud, gave him an official "victim information notice" (normally given to a crime victim, not the person arrested), and told him that he would be notified by mail about his court date. Needless to say, Sierra and his accomplices were not on official police business, nor did they turn over the money or fireworks to Sierra's superiors or report the incident to the police.

When a neighbor later told Daoud that he saw three men loading the fireworks into a civilian Blazer, he realized that the confiscation was not a legitimate police seizure. Daoud then reported the incident to the authorities. While viewing a police line-up, Daoud mistakenly identified Officer Arcenio Cruz (Sierra's partner) as one of the perpetrators, but did not identify Sierra, who was also in the line-up. Shortly thereafter Sierra told Quinones to say he knew nothing if asked about the robbery. Eventually the charges against Cruz were dismissed. Sierra was charged in a four-count superseding indictment with robbery, conspiring to commit robbery, conspiring to violate Daoud's constitutional rights, and violating those rights, in violation of 18 U.S.C. §§ 1951, 2, 241, and 242. On February 13, 1998, Sierra pleaded guilty to count I of the indictment: conspiring to commit robbery in violation of 18 U.S.C. §§ 1951 & 2. For purposes of sentencing, Sierra had a criminal history category of I and, after enhancements for using a firearm, abusing a position of trust, acting as an organizer or leader, and physically restraining the victim, his offense level was 31. This gave Sierra a range of 108–135 months of imprisonment. The district court sentenced him to 120 months' imprisonment and a $5,000 fine. Sierra argues on appeal that his offense level was improperly increased because he did not occupy a position of trust and was not an organizer or leader, and that the district court should have departed downward because he accepted responsibility for his crime.

## II.

### A. Abuse of a Position of Trust

██ The Sentencing Guidelines call for a two-level enhancement if the defendant abused a position of public or private trust or used a special skill in a way that significantly facilitated the commission or concealment of the offense. U.S.S.G. § 3B1.3. We review the district court's interpretation of "public trust" *de novo*, and its determination that the defendant abused his position for clear error. *United States v. Emerson*, 128 F.3d 557, 562 (7th Cir.1997); *United States v. Bhagavan*, 116 F.3d 189, 192 (7th Cir.1997). To determine whether this enhancement applies we apply a two-part test that tracks the Guideline. We review the district court's determination (1) whether the defendant occupied a position of trust; and (2) whether his abuse of the position of trust significantly facilitated the crime. *Emerson*, 128 F.3d at 562. In determining whether the defendant occupied a position of trust his diminutive title or lack of sweeping power is unimportant. *United States v. Strang*, 80 F.3d 1214, 1219–20 (7th Cir.1996). Rather, a person is considered to have occupied a position of trust if he had access to or authority over valuable things, including governmental power. *See United States v. Stewart*, 33 F.3d 764, 768 (7th Cir.1994). A crime is significantly facilitated by a position of trust if the position makes it more difficult to detect the offense or the defendant's responsibility for the crime. U.S.S.G. § 3B1.3 App. n. 1. Put another way, if the defendant's position made it substantially easier to commit or conceal the crime, significant facilitation occurred. *Stewart*, 33 F.3d at 768. Importantly, the position of trust may have facilitated a crime without the victim actually placing any trust in the criminal. *United States v. Zaragoza*, 123 F.3d 472, 482 (7th Cir.1997). The extent of the facilitation is not judged by the ultimate success of the enterprise or its concealment, as this guideline could never be applied unless the concealment failed in some way.

*United States v. Gould*, 983 F.2d 92, 94 (7th Cir.1993).

██ Sierra concedes that as a police officer, he occupied a position of public trust, thus leaving only the question of whether this position facilitated his crime. *See United States v. Parker*, 25 F.3d 442, 450 (7th Cir.1994) (police officer occupies a position of trust); *United States v. Lamb*, 6 F.3d 415, 419 (7th Cir.1993) (same). We note that Sierra used his police badge to gain admission to the store that had just closed, an advantage that criminals of the non-police variety do not enjoy. "A police officer knows the power of [his] badge. Symbolizing the power of the state, a badge invests its possessor with control over people and access to places." *United States v. Foreman*, 926 F.2d 792, 795 (9th Cir.1990). Without seeing the badge, it is unlikely that Daoud would have unlocked his store and allowed the trio to enter. Thus, Sierra's use of his badge to gain admittance to the store he intended to rob, in itself, substantially facilitated his crime. Sierra also used a police victim information notice (which is not generally available to the public) in an effort to trick the victim into thinking that the seizure of the fireworks and money was legitimate. Thus, his access to these notice forms greatly assisted his attempt to conceal the crime, for if Daoud believed that the seizure was an official police action, he was unlikely to have called the police to complain. In fact he did delay reporting the theft because he thought the seizure was official. It is, therefore, readily apparent that Sierra's status as a police officer greatly facilitated his offense and the concealment of his criminal deeds.

Sierra takes exception to this enhancement, arguing that an imposter could have used a fake badge to facilitate the crime, and thus Sierra's position of trust was not essential to the crime. This detour gets him nowhere. Initially we note that § 3B1.3 is used to punish imposters just as severely as those who actually violated their positions of trust in most of

the circuits which have addressed the issue. *United States v. Barnes*, 125 F.3d 1287, 1292 (9th Cir.1997) (physician-impersonator is considered to have occupied a position of trust for purposes of § 3B1.3 because the victims perceived him as a doctor); *United States v. Gill*, 99 F.3d 484, 489 (1st Cir.1996); *United States v. Queen*, 4 F.3d 925, 930 (10th Cir.1993); *but see United States v. Echevarria*, 33 F.3d 175, 181 (2d Cir.1994) (enhancement is limited to those who legitimately occupy a position of trust).[1] So Sierra's argument that an imposter could have pulled off the same crime (and thus § 3B1.3 is not applicable because his position provided him no greater ability to commit the offense) lacks a surface plausibility in light of the fact that in at least three circuits, even the imposter would have his sentence enhanced under § 3B1.3.

Moreover, it does not follow that a police officer's position did not facilitate his crime just because an imposter could use a fake badge to commit the same crime. Regardless of whether an imposter could have committed the same crime, Sierra *was* in a position of public trust and he used *this* position and an *actual* police badge to gain admission to the store and disguise the theft. Perhaps if Sierra had been an imposter instead of the real thing, we could find some solace in knowing that this self-described act of stupidity was carried out by someone who may not have known better. But a police officer with five years on the force cannot reduce his sentence by hiding under the cloak of an imposter.

■ Finally, we note that enhancing Sierra's sentence for this conduct promotes the aims of the abuse of trust provision. As we have previously mentioned, one reason for this enhancement is to deter those in positions of trust from committing crimes in which the entrustment of power increases the probability of success or concealment. *Deal*, 147 F.3d at 563. "With

opportunity and a good chance of escaping detection comes temptation, and the punishment is ratcheted up accordingly." *Id.* Through this sentencing provision, society discourages similar conduct by punishing with greater severity those who use their position of trust to commit crimes. This purpose is served by enhancing the sentences of public servants who abuse the power entrusted to them, regardless of whether criminals feigning the same authority would have increased the likelihood of success of their criminal endeavors. In short, it is irrelevant to our society's desire to deter breaches of the public trust whether an imposter could have enjoyed the same advantages through deceit that Sierra did through his official position. Accordingly, the district court properly applied the abuse of a position of trust enhancement to Sierra's sentence.

## B. Organizer or Leader

■ Under U.S.S.G. § 3B1.1(c), the defendant's offense level is increased by two levels if the defendant was an organizer, leader, manager, or supervisor of the criminal activity for which he was convicted. We review application of this enhancement for clear error. *United States v. Gwiazdzinski*, 141 F.3d 784, 789 (7th Cir. 1998). This provision only requires that the defendant directed one person. *Id.* But in so directing, the defendant must have exercised some real and direct influence. *United States v. Mankiewicz*, 122 F.3d 399, 405 (7th Cir.1997). In determining the provision's applicability, courts consider the defendant's exercise of decision-making authority, the nature of his participation in committing the crime, his recruitment of accomplices, his claimed right to a larger share of the criminal proceeds, the extent of his participation in planning or organizing the crime, the nature and scope of the illegal activity, and the degree of control and authority exercised over

---

1. We previously abstained from addressing this issue. *See United States v. Deal*, 147 F.3d 562, 563 (7th Cir.1998). Because Sierra was

a police officer and not an imposter, this question is not essential to our analysis and we again decline to address it.

others. U.S.S.G. § 3B1.1 App. n. 4; *United States v. McClinton*, 135 F.3d 1178, 1191 (7th Cir.1998). This list of factors, however, is not exhaustive, nor do all of these factors need to be present in order to enhance the sentence. *Mankiewicz*, 122 F.3d at 406. Rather, these and possibly other factors must be weighed by the district court in light of the Guidelines' intent to punish with greater severity leaders and organizers of criminal activity. *Cf. id.*

■ In applying this enhancement the district court correctly noted that Sierra made the decision to rob this particular store, and it was he who ordered Lozada into the store to determine the location of the fireworks. Sierra also advised Daoud that he was under arrest, and directed his cohorts in robbing the store by ordering them to remove the boxes of fireworks from the store. Moreover, it was Sierra who ordered them to load the fireworks into his truck, thereby giving him significant control over the stolen goods and augmenting his ability to dispose of them. Sierra was the one who gave Daoud the victim information notice and advised him that he would be contacted later about his court date. It is also relevant to the organizer/leader analysis that the defendant was armed during the robbery, thus providing him with a greater ability to enforce his commands, and that Sierra drove his own truck to the store, which also gave him greater control over the crime. Finally, we also note that Sierra was ten years older than his two teenage friends, which further suggests that he was the leader of the group. These facts adequately demonstrate Sierra's leadership role in the robbery. Thus, the district court did not clearly err in enhancing Sierra's offense level on this ground.

## C. Acceptance of Responsibility

■ A defendant is entitled to a two-point decrease in his offense level if he clearly demonstrates that he accepts responsibility for his crime. U.S.S.G. § 3E1.1(a). We review for clear error the district court's factual determination as to whether the defendant accepted responsibility. *United States v. Grimm*, 170 F.3d 760, 766 (7th Cir.1999). To qualify for this reduction, the defendant must show by a preponderance of the evidence that he: (1) clearly recognized and accepted responsibility for his conduct; (2) timely notified authorities of his intention to enter a plea of guilty; and (3) truthfully admitted the conduct comprising the offense of conviction and admitted, or did not falsely deny or frivolously contest, the relevant conduct as it relates to the offense of conviction. *Id.*; *United States v. Ewing*, 129 F.3d 430, 435 (7th Cir.1997) A defendant does not accept responsibility when he denies committing criminal actions and relevant conduct which the district court attributes to him. *Id.*; *United States v. Bailey*, 97 F.3d 982, 986 (7th Cir.1996). Furthermore, as to timeliness, we have noted that a last-minute guilty plea is usually not sufficient, as it is generally indicative of a defendant's desire to escape greater punishment rather than true remorse. *Ewing*, 129 F.3d at 436. "In the absence of evidence of sincere remorse or contrition for one's crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility." *Id.* (citation and internal quotations omitted).

■ The district court found that Sierra had not accepted responsibility for his conduct because he blamed Quinones for giving Daoud the victim information notice. While the court found that Quinones had filled out the form, it determined that it was Sierra's idea to use the form and that Quinones was only acting at Sierra's direction. Accordingly, the district court found that Sierra was attempting to minimize his involvement in the crime. This finding is not clearly erroneous. *See United States v. Linnear*, 40 F.3d 215, 222 (7th Cir.1994) (no acceptance of responsibility where the defendant attempted to minimize his role in the crime). It's also apparent that Sierra took his time in plead-

ing guilty. He initially pleaded not guilty on August 8, 1997. His plea of guilty was entered only on February 13, 1998, the last business day before the trial was supposed to commence; and he only elected to plead guilty after the government obtained the cooperation of Quinones and Lozada, thereby greatly increasing the probability of conviction. The lateness of Sierra's guilty plea indicates that the plea was a last-ditch effort to save himself some prison time, rather than a remorseful desire to make amends.[2] Therefore, the district court did not err in finding that Sierra did not demonstrate that he accepted responsibility for his conduct.

AFFIRMED.

---

**2.** Sierra correctly points out that he pleaded guilty the day after the superseding indictment was filed, February 13, 1998. The initial indictment was dismissed because it in-

correctly identified Cruz as a perpetrator of the crime, but the two indictments otherwise charged Sierra with the same crimes.