In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1403

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS W. BELWOOD,

Defendant-Appellant.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 30182--William D. Stiehl, Judge.


Argued June 7, 2000--Decided July 25, 2000



  Before POSNER, Chief Judge, COFFEY and RIPPLE,
Circuit Judges.

  COFFEY, Circuit Judge.  On August 20, 1999, a
federal grand jury sitting in the Southern
District of Illinois returned a three-count
indictment charging Thomas Belwood with
conspiracy to distribute and possession with
intent to distribute marijuana (Count 1), in
violation of 21 U.S.C. sec.sec. 841(a)(1) & 846,
and possession with intent to distribute
marijuana (Count 3), in violation of 21 U.S.C.
sec. 841(a)(1)./1 On October 25, 1999, Belwood
pled guilty to Counts one and three of the
indictment./2 At the sentencing hearing, the
trial judge concluded that Belwood, a Bureau of
Prisons employee, had abused a position of trust
within the meaning of U.S.S.G. sec. 3B1.3,/3 and
sentenced him to 10 months' imprisonment on both
counts, each of his sentences to run concurrent
with each other, a $2,000 total fine, a $200
special assessment, and 2 years' supervised
release. On appeal, Belwood challenges the trial
court's determination that he abused a position
of trust under the guidelines. We affirm.

I.  BACKGROUND

  In October of 1998, the Federal Bureau of
Investigation ("FBI") spearheaded a joint
investigation with other federal agencies that
eventually uncovered the existence of a drug

conspiracy inside the Federal Correctional Institute in Greenville, Illinois. The probe began when a Greenville inmate serving as a confidential informant revealed that drugs were being smuggled into the prison by a staff member. Subsequent investigation revealed Belwood was the staff member involved in the distribution of marijuana inside the prison.

Belwood was employed by the Bureau of Prisons as a prison factory foreman, a position where he supervised inmates in the prison's internal job training program./4 As an employee of the Department of Justice, he took an oath of office; furthermore, he was authorized to arrest persons on Bureau of Prisons premises for a number of offenses, including (ironically) possession of contraband. See 18 U.S.C. sec. 3050(2). Pursuant to this authorization and as part of his job duties, Belwood searched inmates coming and going to the factory.

Unlike the prisoners he was charged with supervising, Belwood was never searched when entering the prison. Furthermore, Belwood was not subject to the prison's drug detection program that required visitors to pass through an ION Spectometry drug detection device before entering the prison./5 Belwood abused this freedom from search by obtaining marijuana outside the facility and passing it inside the prison walls to an inmate, Kevin Hall, who later distributed the drugs to other inmates.

On January 28, 1999, a government informant was fitted with a recording device, and the government recorded the informant passing 107.3 grams of marijuana to Belwood in a restaurant parking lot. Following his arrest, Belwood confessed his role in the drug smuggling operation. Belwood subsequently pled guilty, and the trial judge ordered that a Presentence Investigation Report ("PSR") be prepared.

The PSR recommended that Belwood's offense level be increased by two levels because he had abused a position of trust under U.S.S.G. sec. 3B1.3. Belwood objected to the abuse of trust adjustment, claiming that his position with the prison was not a position of trust and that his position did not facilitate the commission of the offense or aid in its concealment./6 In addition, Belwood argued that the upward adjustment was improper because there was no identifiable victim of his criminal conduct.

The judge rejected Belwood's arguments and stated:

He was a prison employee of a Federal prison, and

which his duties involved not only his work as a foreman in the prison industry, but that also involved his dealings with the inmates in that he was to prevent inmates from violating any of the rules, including the introduction of contraband into the institution. The trust, [sic] he accepted his position of trust by taking an oath. That oath provided that he faithfully discharge the duties of his office. There is no question in my mind but that his actions contributed directly to the commission of this crime.

The drugs were introduced into the institution solely through him and his position. . . . Without Mr. Belwood's participation, this conspiracy would not have worked. . . . [Furthermore,] I do not believe that it is necessary for the imposition of this 2 level increase under guideline 3B1.3 that a single or several victims be identified as such.

Belwood appeals the sentencing judge's decision to impose the two-level increase under section 3B1.3.

II.  ISSUES

On appeal, Belwood concedes that his position at the prison was a position of trust; he argues that the judge was in error when he increased his base offense level under section 3B1.3 because his position with the prison did not facilitate the smuggling of drugs into the prison./7

III.  ANALYSIS

We review the district court's determination that the defendant abused his position for clear error. See United States v. Sierra, 188 F.3d 798, 802 (7th Cir. 1999); United States v. Bhagavan, 116 F.3d 189, 192-93 (7th Cir. 1997). As mentioned previously, courts apply a two-part test prior to imposing an increased penalty under section 3B1.3: 1) whether the defendant occupied a position of trust; and 2) whether his abuse of trust significantly facilitated the crime. See Sierra, 188 F.3d at 802. Because Belwood concedes that his position with the prison was a position of public trust, we are left only with the question of whether his position significantly facilitated his crime.

As we stated in Sierra, 188 F.3d at 802:

A crime is significantly facilitated by a position of trust if the position makes it more difficult to detect the offense or the defendant's responsibility for the crime. U.S.S.G. sec. 3B1.3 App. n.1. Put another way, if the defendant's position made it substantially

easier to commit or conceal the crime, significant facilitation occurred. Stewart, 33 F.3d at 768.

In this case, there can be no doubt that Belwood's position on the prison staff made it substantially easier to smuggle marijuana into the prison. Because of his position, neither Belwood nor his belongings were searched when he entered the prison. We are of the opinion that it is beyond question that freedom from such searches aided him in smuggling marijuana into the prison; therefore, the judge did not err in concluding that Belwood's abuse of his position of trust in the prison made it substantially easier for him to smuggle marijuana into the prison.

The decision of the district court is

AFFIRMED.

/1 The other count in the indictment (Count 2) charged David Johnson, a co-conspirator, with possession with intent to distribute marijuana, in violation of 21 U.S.C. sec. 841(a)(1). The second count is not involved in this appeal.

/2 There was no written plea agreement in this case.

/3 Section 3B1.3. (Abuse of Position of Trust or Use of Special Skill) states in part "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels."

/4 Belwood's official job title was UNICOR Fabric Work Supervisor. "UNICOR" is the commercial or trade name of Federal Prisons Industries, Inc., a government corporation within the Bureau of Prisons whose mission is to provide work simulation programs and training opportunities for inmates confined in federal prisons. See 28 U.S.C. sec. 345.111(a).

/5 The IONTRACK Itemiser has the dual purpose of drug and explosive detection. According to the Federal Bureau of Prisons, Drug Free Prison Zone Project (July 1998), the basis of ion drug and explosives detection technology is the collection and vaporization of atmospheric particulate; ionized vapors drift through the ion mobility spectrometer at different speeds, depending on their structure and size, and the speed at which the ions move provides a distinct "thumbprint" that identifies the original substance. An alarm

alerts the machine operator when a "thumbprint" for a known drug or explosive has been detected.

/6 To determine whether the section 3B1.3 enhancement applies, courts apply a two-part test that tracks the Guideline: 1) whether the defendant occupied a position of trust; and 2) whether his abuse of the position of trust significantly facilitated the crime. See United States v. Sierra, 188 F.3d 798, 802 (7th Cir. 1999).

/7 On appeal, Belwood also asserts that section 3B1.3 requires that the district court identify a specific victim of his criminal conduct. This argument is without merit. There is nothing in either the text of the guideline or its application notes to suggest that Congress intended such a requirement. Nor does such a requirement make any sense; a person can clearly abuse a position of trust without there being any identifiable victim. For example, a judge or police officer who takes a bribe clearly abuses a position of trust and, as such, a section 3B1.3 enhancement would be warranted. Accordingly, we need not address this argument any further.