**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1144n.06

**Nos. 11-3434/11-3497**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 06, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| ZVONKO SARLOG, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  COOK and STRANCH, Circuit Judges; LAWSON, District Judge.[*]

COOK, Circuit Judge.  Defendant-Appellant Zvonko Sarlog, a federal prisoner, challenges the district court's imposition of a 121-month sentence for conspiracies to launder money and to possess and distribute cocaine, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(A), and 1956(h). Sarlog also challenges the district court's denial of his ineffective assistance of counsel claim under 28 U.S.C. § 2255.  For the following reasons, we AFFIRM both judgments.

I.

This case returns to us after remand to the district court.  Following his initial conviction and sentencing, Sarlog failed to timely appeal.  Having thus forfeited his appellate rights, Sarlog moved,

---

*The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

under 28 U.S.C. § 2255, to vacate his sentence, *see Sarlog v. United States* (*Sarlog I*), 422 F. App'x 399 (6th Cir. 2011), claiming that his attorney rendered ineffective assistance by (1) failing to follow Sarlog's instruction to file an appeal and (2) failing to call as witnesses two co-conspirators to contest the application of two sentencing enhancements. *Id.* at 401. Finding Sarlog entitled to an evidentiary hearing on these issues, we remanded to the district court. *Id.* at 404.

On remand, the district court determined that Sarlog did indeed instruct his attorney to file a timely notice of appeal, entitling Sarlog to file a delayed appeal. Sarlog's evidence left the court unpersuaded, however, on the failure-to-call-co-conspirators aspect of his ineffectiveness claim.

With his delayed appeal, Sarlog challenges the application of the two sentencing enhancements. Sarlog separately appeals the denied aspect of his ineffectiveness claim under § 2255. We review the evidence collected in Sarlog's original sentencing hearing and the remand hearing.

## A.     *Sarlog's Initial Sentencing*

Following Sarlog's conviction, the district court held a sentencing hearing to determine whether Sarlog deserved the enhancements—managerial-role and abuse-of-trust. Because safety-valve treatment—which allows sentencing defendants below the statutory minimum—is available only to non-managers, the outcome of the hearing determined Sarlog's eligibility for the treatment. The government presented a mass of evidence supporting each enhancement.

With respect to the managerial-role enhancement, the government offered a series of phone conversations in which Sarlog dictated orders to his co-conspirators. The calls revealed Sarlog (1) ordering Kenneth Tate, a co-conspirator, to deliver money to Texas; (2) telling his mother to meet another co-conspirator to deliver a package; (3) telling his mother to come to his house where the drugs were stored; (4) summoning Tate to his house; and (5) warning Tate that he would order him to fly to Texas unless he could mail money to Texas that day. Throughout these calls, Sarlog spoke in an authoritative tone. In one call, Sarlog told his mother, "[G]o and do what you've got to do, like I said." In another, Sarlog told her, "[N]o, no, no, you go and do it and you call me right back." Sarlog also told Tate, "[Y]ou're hopping on a plane tonight." Finally, an undercover FBI agent heard Sarlog tell his co-conspirators, "I run this shit. Over time you'll see what I'm all about."

In support of the abuse-of-trust enhancement, the government offered several ways in which Sarlog used his status as a police officer to aid his criminal enterprise. According to an undercover agent, Sarlog boasted that his status as a police officer was "a tool that allows [him] to get in and out of places that most other people can't." The agent also recounted a conversation with co-conspirator Rkman, who explained that "the drugs were kept at Mr. Sarlog's house . . . intentionally because Mr. Sarlog is a police officer, [and] was beyond suspicion." Finally, the agent saw Sarlog flash his police badge to a security employee after the employee disrupted him during the course of a drug-related transaction at a nightclub, threatening to have him fired for the disruption.

Though the district court found the evidence sufficient to support both enhancements, it varied downward from the recommended Guidelines range of 151 to 188 months, sentencing Sarlog to only 121 months of imprisonment. Before adjournment, the district court asked the parties if they had any remaining objections; Sarlog's attorney answered no.

B.      *The Evidentiary Hearing on Remand*

Following our remand, the district court conducted an evidentiary hearing on whether Sarlog's counsel performed below constitutional standards. As instructed, the court focused on two questions: First, whether Sarlog's attorney failed to file a notice of appeal despite Sarlog's instructions to appeal his sentence. Second, whether Sarlog's attorney rendered ineffective assistance by failing to call Tate and Rkman, two of Sarlog's co-conspirators, during the sentencing hearing. As previously mentioned, the court answered the first question in the affirmative, and the government does not appeal that finding.

Addressing the second question, Sarlog attempted to show that the testimony of the two men would have prevented the application of both enhancements. Rkman, Sarlog, and Sarlog's attorney testified on this point during the hearing. Rkman offered his purportedly exculpatory testimony, and Sarlog's attorney followed by explaining his decision not to offer Rkman's testimony. First, Rkman testified that Sarlog played "no role" during the drug conspiracy and that Sarlog held no authority over the sale or transportation of the controlled substances. Further, he testified that Sarlog did not recruit ring members or receive money from the sale of drugs—the latter because the ring never

turned a profit. In response, Sarlog's former attorney testified to his belief that Rkman's testimony would have damaged Sarlog's case due to Rkman's deal with the government. Further, he explained that Rkman's representation by counsel precluded him from interviewing Rkman.

Tate—the second co-conspirator—did not testify at the evidentiary hearing. Regarding Tate, Sarlog's attorney explained that a review of the transcripts of intercepted phone conversations led him to believe that Tate's testimony would have been unhelpful.

At the close of the hearing, the district court concluded that Sarlog's attorney did not perform below constitutional standards. Sarlog's new counsel objected to that finding.

## II.

We first address our jurisdiction over Sarlog's § 2255 claim. Though we ordinarily do not entertain a § 2255 claim during the pendency of a direct appeal, Sarlog's direct appeal poses no jurisdictional obstacle to his § 2255 claim. *See, e.g.*, *United States v. Prows*, 448 F.3d 1223, 1228 (10th Cir. 2006) ("[T]here is no jurisdictional barrier to a district court entertaining a § 2255 motion while a direct appeal is pending . . . ."); *United States v. Outen*, 286 F.3d 622, 632 (2d Cir. 2002) ("[T]here is no *jurisdictional* bar to a district court's adjudication of a § 2255 motion during the pendency of a direct appeal." (emphasis in original) (citations omitted)). In general, two considerations justify staying review of a § 2255 claim: to avoid judicial conflict and to await the development of a full record for review. *See United States v. Davis*, 924 F.2d 501, 504 (3d Cir.

1991) ("Jurisdiction to grant relief should be vested in only one court at a time."); *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C. Cir. 1989) ("Where a party has filed . . . a § 2255 action during the pendency of the appeal . . . we will stay the entire appeal to permit the district court to develop a record for appeal.").

Neither rationale applies to this case; both Sarlog's direct appeal and his § 2255 claim await resolution, and the district court developed the record for review through an evidentiary hearing. In similar circumstances, we and other circuit courts of appeal consolidate direct appeals and § 2255 claims. *See, e.g.*, *United States v. Graham*, 91 F.3d 213, 216 (D.C. Cir. 1996); *United States v. Montgomery*, 998 F.2d 1468, 1472 (9th Cir. 1993); *United States v. Hawkins*, 969 F.2d 169, 171 (6th Cir. 1992) (per curiam); *Barker v. United States*, 579 F.2d 1219, 1221 (10th Cir. 1978).

Accordingly, we address the two sentencing enhancements raised in Sarlog's direct appeal, as well as his ineffective assistance claim brought under § 2255.

*A.      Managerial-Role Enhancement*

Sarlog challenges both the procedural reasonableness of the managerial-role enhancement and the sufficiency of the evidence supporting it. Both challenges fail.

First, Sarlog contends that the district court's failure to articulate its reasons for applying the enhancement rendered his sentence procedurally unreasonable. Because Sarlog failed to raise this objection when given the opportunity at his sentencing hearing, we review this procedural-

reasonableness argument for plain error.[1] *See United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011).

The record debunks this argument. In its sentencing opinion, the district court adequately explained its decision to apply the managerial-role enhancement:

> The Court listened carefully to the recorded telephone conversations and concluded that the transcript of the intercepted calls was accurate. The Court finds that the gist of the intercepted phone calls clearly demonstrates, by the preponderance of the evidence, that . . . the defendant did act as a manager and supervisor in the exercise of the conspiracy involving cocaine.

Buttressing its conclusion, the district court attached to its memorandum call transcripts in which Sarlog issued orders to his co-conspirators. Because a district court that presided over the trial need not cite specific facts to support a defendant's role in a conspiracy, we find the district court's factual explanation adequate to defeat Sarlog's procedural-reasonableness challenge. *See, e.g.*, *United States v. Caseslorente*, 220 F.3d 727, 736 (6th Cir. 2000) (finding brief reference to evidence in record sufficient to justify application of enhancement).

---

[1]Sarlog argues that he renewed his objection after the sentence was pronounced. (*See* Appellant Reply Br. at 7; R. 168, Sentencing Hr'g Tr. at 126 ("We just wanted to, for the record, indicate that we still maintain our objections with regard to those raised in our objections to the presentence report.").) Sarlog's objections to the presentence report concerned the application of the enhancements—not the adequacy of the court's explanation. (*See* R. 168, Sentencing Hr'g Tr. at 2.)

Sarlog's next procedural challenge fares no better. After the district court heard the government play twenty intercepted phone calls, it asked, "[W]here is the evidence that [Sarlog] didn't manage or supervise anyone in this case? It seems to me that you almost have to prove a negative." (R. 168, Sentencing Hr'g Tr. at 92–93.) Seizing on this statement, Sarlog contends that the district court improperly shifted the burden of proof to Sarlog.

By ignoring its context, Sarlog mischaracterizes the court's statement. The court asked for evidence that Sarlog did not manage the conspiracy only after listening to a long series of phone calls in which Sarlog dictated orders to several co-conspirators. Rather than demonstrating a requirement that Sarlog prove his innocence, these remarks demonstrate only the court's search for contrary evidence before rendering a final decision. Indeed, the district court articulated the government's burden twice: it stated that the enhancement applied "as long as the government can show one person being managed" (R. 168, Sentencing Hr'g Tr. at 91), and it discussed what "the government needs to show" (*id.* at 92). This is not error, much less plain error.

Sarlog next argues that the district court improperly inverted the order of analysis by finding him ineligible for the safety-valve treatment before determining whether he deserved the managerial-role enhancement. Sarlog grounds this unpersuasive argument on the order in which the district court announced its findings, again taking its remark out of context. (*See* R. 168, Sentencing Hr'g Tr. at 100, Page ID 1052 ("[T]he defendant fails to qualify for the safety valve . . . because I find that the defendant was at least a manager . . . .").) Safety-valve treatment allows a district court to

impose a sentence below the statutory minimum, but only if the court finds that Sarlog was not a manager. *See* U.S.S.G. § 5C1.2(a)(4). Due to the intertwined nature of the treatment and the managerial-role enhancement, it makes sense to announce these findings together. Again, we find no error here, never mind plain error.

Finally, Sarlog challenges the sufficiency of the evidence supporting the enhancement. We review for clear error the district court's determination of a defendant's role in an offense. *United States v. Okayfor*, 996 F.2d 116, 122 (6th Cir. 1993).

Challenging the government's evidentiary showing, Sarlog claims that the Guidelines require proof of several factors—such as decision-making authority and the right to a larger share of the profits—to support the managerial-role enhancement. For each factor, Sarlog challenges the sufficiency of the government's evidence.

Sarlog misunderstands the relevance of these "factors." The Guidelines provide that

> [i]n distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. Sarlog cites this paragraph but omits the first sentence (*see* Appellant Br. at 29), which explains that the factors are designed to assist district courts in distinguishing

organizers (warranting four points) from managers (warranting three points). From the outset, the government acknowledged that Sarlog acted only as a manager, not a leader. (*See* Appellee Br. at 10 n.1.) We find that the call transcripts, deemed credible and incorporated in the district court's opinion, support the district court's managerial-role finding.

>    B.    *Abuse-of-Trust Enhancement*

Sarlog next disputes the district court's imposition of the abuse-of-trust enhancement, which it applied for Sarlog's use of his status as police officer to further his conspiracy. Sarlog raises the same arguments offered against the managerial-role enhancement—that (1) the application of the enhancement was procedurally unreasonable for lack of explanation and (2) insufficient evidence supported the enhancement.

Applying the plain-error standard, we first address Sarlog's procedural challenge and find that, once more, the record reflects otherwise. After an FBI agent testified about the various ways that Sarlog used his position of authority to further his scheme, the district court discussed police officers' "special position" of trust with defense counsel and found that "the testimony rises to the level, by a preponderance of the evidence, to demonstrate [the] abuse of [a] position of trust." (R. 168, Sentencing Hr'g Tr. at 109–10.) The court thus specified that it grounded its application of the enhancement on the agent's testimony. On this record, we cannot find that the district court plainly erred.

Turning to Sarlog's sufficiency-of-the-evidence argument, we find no clear error. *See United States v. Lang*, 333 F.3d 678, 682 (6th Cir. 2003). The government's evidence showed that Sarlog (1) flashed his police badge to a club employee and threatened to have him fired, (2) pointed his gun at the undercover agent in jest, (3) stored the drugs in his house, and (4) warned his co-conspirator about a police search and possible arrest. Sarlog nevertheless argues that the evidence demonstrates that he used his police-officer status only to *moderately* help his scheme rather than to *significantly* facilitate the conspiracy, as the Guidelines require. *See* U.S.S.G. § 3B1.3 ("If the defendant abused a position of public or private trust . . . in a manner that *significantly* facilitated the commission or concealment of the offense, increase [the offense category] by 2 levels." (emphasis added)).

But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Because the evidence supports the view that Sarlog knowingly used his position as a police officer to facilitate and to conceal the commission of a crime (*see* R. 168, Sentencing Hr'g Tr. at 6–7, 10–11), the district court's finding that Sarlog abused his position of trust is not clearly erroneous.

Sarlog nonetheless contends that the district court's own pronouncement conflicts with its factual finding. In its sentencing memorandum, the court stated, "[T]he defendant did use his position, although marginally, as a police officer in assisting in the commission of the conspiracy." Seizing on the word "marginally," Sarlog maintains that the district court improperly applied the

enhancement, which requires that a defendant's position of authority *significantly* facilitate a conspiracy.

We see no contradiction between the district court's statement and the pertinent section of the Guidelines, which reads,

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of . . . trust must have contributed *in some significant way* to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3 cmt. n.1 (emphasis added). The Guidelines thus contemplate a situation where a defendant uses his position of trust to facilitate criminal activity "in some significant way." The inquiry focuses on the nature of the position and the effect of the improper use of the position—rather than the degree of involvement—in determining whether to apply the enhancement. Accordingly, *marginally using* his position, as the district court found, does not necessarily negate Sarlog's *significant facilitation* of the crime. *Cf. United States v. Belwood*, 222 F.3d 403, 406 (7th Cir. 2000) (holding that a Bureau of Prisons employee who was not subject to searches due to his position abused his position of trust); *United States v. Williamson*, 53 F.3d 1500, 1525 (10th Cir. 1995) (finding that a traffic officer abused his position of trust by warning members of drug conspiracy of investigations). We find no error in the district court's determination.

In any event, the exchange between Sarlog's counsel and the district court at the sentencing hearing dispels any remaining doubt that the district court might have misapplied the law. During the sentencing hearing, Sarlog's attorney noted that "the guidelines, 3B1.3, indicate that the abuse of the position must significantly facilitate the concealment or commission of the offense." In response, the district court asked him why Sarlog's warning his co-conspirator to stay away to avoid arrest failed to meet this standard. The court further inquired, "What about the storage of the marijuana at his home? From the sound of it, his home is more or less sacrosanct. He is a police officer and nobody is going to suspect him. That's the safest place to keep the marijuana." This dialogue demonstrates that the district court appreciated the "significantly" requirement. We therefore affirm the abuse-of-trust enhancement.

### C. *Ineffective Assistance Claim*

Last, we consider Sarlog's ineffective-assistance-of-counsel claim under § 2255. Sarlog contends that his lawyer's failure to call Rkman and Tate during his sentencing rendered the lawyer's performance constitutionally inadequate. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

To obtain relief, Sarlog must demonstrate that (1) his attorney's performance did not meet an objective standard of reasonableness and that (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Sarlog bears the burden of showing prejudice

from the allegedly deficient performance. *Id.* at 693; *see also Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001) (requiring the defendant to show a reasonable probability that, but for counsel's error, his sentence would have been different). After considering Sarlog's arguments regarding the prejudicial effect of Rkman's and Tate's absence from his sentencing hearing, we find that he fails to meet this burden.

Sarlog fails to demonstrate prejudice stemming from Tate's absence because Tate did not testify at the evidentiary hearing on remand, despite the district court's order allowing him to travel for that purpose. *See Davis v. Booker*, 589 F.3d 302, 307–09 (6th Cir. 2009) (finding no prejudice when there is no evidence that the witness who did not testify would have exculpated him); *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994) (same). Because Sarlog has not shown that his sentence would have differed had Tate testified, his ineffective-assistance claim turns on whether Rkman's testimony would have made any difference.

We remain unconvinced that Rkman's testimony would have affected Sarlog's sentence. During the evidentiary hearing, Rkman testified that Sarlog (1) did not play any role in the conspiracy, (2) did not direct the transportation of drugs, (3) held no authority over the drugs stored in his house, (4) never recruited members of the conspiracy, (5) did not receive money from Rkman, though only because the ring's operation was not profitable, and (6) did not manage or supervise anyone in Rkman's absence. Though this testimony tends to exculpate Sarlog, we find no reasonable probability that it would have changed Sarlog's sentence. First, Rkman admitted that he was

unfamiliar with Sarlog's local activities as Rkman spent most of his time in Texas. Second, Rkman's testimony is too ambiguous and general to benefit Sarlog; statements such as "[Sarlog] didn't play no [sic] role," or "there was really no managing," do not undermine Sarlog's role in the conspiracy in light of the government's overwhelming evidence and Sarlog's demanding language in the intercepted phone calls.

Because Sarlog fails to demonstrate that either witness's absence prejudiced him, we affirm the district court's denial of Sarlog's § 2255 claim.

## III.

We AFFIRM the district court's sentencing judgment and its denial of Sarlog's § 2255 claim.