NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0256n.06

Case No. 25-3236

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 04, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE NORTHERN |
| JERRY BAKER, | ) DISTRICT OF OHIO |
| Defendant-Appellant. | ) |
| | ) OPINION |
| | ) |
| | ) |

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Jerry Baker pleaded guilty to nine counts of various criminal offenses relating to his trafficking in large quantities of marijuana in Cleveland, Ohio. He was sentenced to 168 months in prison and four years of supervised release.

On appeal, Baker challenges only his sentence. He argues that the district court imposed a procedurally unreasonable sentence when it applied an enhancement for making credible threats of violence. And he contends that his sentence is substantively unreasonable because the court gave insufficient weight to the evidence that he presented on mitigating factors. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Baker was the leader of a major drug-trafficking organization. The organization purchased marijuana from Walter Sornoza in Los Angeles, California. Baker often sold the drugs from the premises of In and Out Tires in Cleveland, a shop that he owned with his father. When Baker was

not present at In and Out Tires, he directed drug customers to the shop to purchase drugs from his father, from his associate Deshaun Martin, and from others. And sometimes Baker and Martin sold the drugs from their own residences.

Baker and Martin collected the proceeds of the drug sales and directed their associates to convert the proceeds into money orders. Moniqka Hazzard, Baker's girlfriend, typically flew to California on commercial airlines to deliver the money orders to Sornoza to repay him for the drugs.

By November 2022, Baker was owed $10,000 for drugs purchased by Victim B. Baker drove to a bar and restaurant called Aura Social Club (Aura) on or about November 11, 2022, intending to collect on the debt. Early in the morning on November 11, he had several phone conversations with Hazzard, Martin, and another individual referred to in the record simply as L.H. These calls were intercepted by law enforcement.

Armed with a knife, Baker, along with four of his associates, arrived at Aura and waited for Victim B to exit the front door of the establishment. Baker recounted to Hazzard: "I got my knife. . . . I'm just about to slice [him]. Soon as he come out the door[,] I'm about to take one buck, right across his face, right." But instead of exiting Aura through the front door, Victim B went through the back door with Victim D. This angered Baker. He recounted to Hazzard that he told Victim D that Victim D was now responsible for paying off the $10,000 drug debt owed by Victim B because Victim D had helped Victim B leave Aura through the back door. Baker told Victim D: "You paying everything tomorrow . . . [o]r it's on. You gonna pay my whole $10,000 tomorrow . . . or I'm a tell you, I'm going to treat you like an op [slang for "opponent"] or a bitch ass."

Based on this November 2022 conduct, the district court applied a sentencing enhancement under United States Sentencing Guidelines § 2D1.1(b)(2) for making credible threats of violence. It sentenced Baker to 168 months in prison, which was at the low end of the applicable Guidelines range for Baker's offenses. This timely appeal followed.

## II.    ANALYSIS

### A.  Baker's sentence was procedurally reasonable

"A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). We accept the district court's factual findings "unless they are clearly erroneous." *United States v. Pineda-Duarte*, 933 F.3d 519, 522 (6th Cir. 2019) (quoting *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008)).

Baker's sole challenge to the procedural reasonableness of his sentence is that the district court improperly applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(2). That enhancement applies "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence" in connection with a drug offense. U.S.S.G. § 2D1.1(b)(2).

This court has not applied a consistent standard in reviewing a district court's ultimate conclusion that a defendant's actions and statements amounted to a "credible threat to use violence" under U.S.S.G. § 2D1.1(b)(2). *See United States v. Roberson*, No. 23-5588, 2024 WL 2154285, at *4 (6th Cir. May 14, 2024) (noting that the Sixth Circuit has yet to decide what standard of review should apply and that other circuits review a district court's application of the enhancement under the clear-error standard, but ultimately declining to resolve the question). We likewise need not resolve this issue because Baker's statements and actions amount to a credible threat to use violence even under de novo review. *See id.* (explaining that the defendant's "social-media posts rose to the level of a 'credible threat to use violence' . . . even under de novo review").

The district court applied the enhancement based on two alleged threats to use violence. One alleged threat was against Victim B, which occurred while Baker waited with a knife outside of the front door of Aura for Victim B to exit the establishment. The other alleged threat was against Victim D, based on Victim D having helped Victim B leave Aura through the back door.

In applying the sentencing enhancement, the district court relied on transcripts of the intercepted phone calls. Baker argues that the transcripts were unreliable because they reflect only Baker's recounting of what had happened. He contends that the government failed to proffer any evidence to corroborate that he was present at Aura on the night in question or that he had a knife in his possession.

This argument fails because the district court can consider any evidence at sentencing that has "sufficient indicia of reliability to support its probable accuracy." *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) (citations omitted). "The minimum-indicia-of-reliability standard is a relatively low hurdle that asks only that *some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

Baker presented a detailed factual basis for his offenses when he pleaded guilty. He admitted that "On or about November 11, 2022, BAKER made numerous threats towards Victim D, whom he believed had assisted Victim B escape an attempted debt collection while at the Aura Social Club. BAKER stated that Victim D was now responsible for Victim B's drug debt to him." Baker further admitted that "On or about November 11, 2022, BAKER told Victim D that he would treat him like an 'op[]' if Victim D did not repay Victim B's drug debt." At his plea hearing, Baker agreed that these facts were "true and accurate."

Moreover, the government presented other evidence, apart from Baker's own recollection, that corroborates that Baker was present at Aura on November 11, 2022. Baker called Martin at 2:28 a.m. on that date and asked: "Where [Victim B] at? . . . Man I don't see [him]." And in a conversation at 2:32 a.m. with L.H., L.H. told Baker that Victim B "was still in the back." These calls corroborate the finding that Baker was at Aura that night waiting for Victim B.

Although the transcripts primarily reflect Baker's recounting of the events that transpired, they also constitute admissions that he was at Aura. Baker's admissions in his plea agreement and the corroborating evidence stated above also support their factual accuracy. *See United States v. Rice*, 844 F. App'x 844, 847 (6th Cir. 2021) (explaining that the "low reliability threshold" is satisfied by "at least some corroborative relevant details").

Baker next argues that the district court should have considered the "recordings of the conversations themselves [] or live testimony." He contends that "[j]udging credibility in this context . . . [is] guesswork" because written transcripts cannot convey "tone, demeanor, laughter, pauses, and slurred speech."

But Baker had stipulated to using the transcripts for the purpose of sentencing. And this court has previously upheld a district court's application of a sentencing enhancement based on transcripts of recorded calls. *See United States v. Sarlog*, 504 F. App'x 426, 432 (6th Cir. 2012) ("We find that the call transcripts, deemed credible and incorporated in the district court's opinion, support the district court's . . . finding."). We therefore are not persuaded by Baker's arguments that the district court erred by relying on the transcripts.

Baker further argues that "through all the bluster it's difficult to discern what . . . Baker told Victim D except for the fact that he wanted his money back and was going to hold Victim D responsible." What he told Victim D, Baker argues, does not amount to the threat of a "specified

physical injury" that can support the sentencing enhancement for making threats of violence. And, Baker contends, "[n]o one seemed to take his threats particularly seriously," indicating that any threat he made to Victim D was not credible.

The district court, however, found that Baker had "intend[ed] to injure . . . victim[] D." As we explained above, Baker admitted in his plea agreement that he had made a threat against Victim D, telling Victim D that he would treat Victim D "like an 'op[]'" if Victim D did not repay the drug debt. After Baker recounted to Hazzard what he had told Victim D, Baker said to her: "I'm about to f*** [him] up," "I'm about to destroy [him] tomorrow," and "I'm going to torture [him]." The evidence that Baker had driven to Aura with a knife shows that he had the means to carry out that threat.

Given this context, the district court did not err in concluding that Baker had intended to cause physical harm to Victim D. The evidence is sufficient to establish, by a preponderance of the evidence, that Baker credibly threatened Victim D. *See United States v. Roberson*, No. 23-5588, 2024 WL 2154285, at *4-5 (6th Cir. May 14, 2024) (holding that the defendant's statements rose to the level of being a credible threat when the defendant stated on social media that he wanted two officers "gone," suggested that he would pay money for their murders, and the record showed that he had access to guns and money). Because we conclude that Baker's statements to Victim D were sufficient to support the enhancement, we need not consider Baker's additional challenges to applying the enhancement based on his alleged threat against Victim B.

**B. Baker's sentence was substantively reasonable**

Baker next argues that his sentence was substantively unreasonable. We review that claim under the abuse-of-discretion standard. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). "The essence of a substantive-reasonableness claim is whether the length of the sentence

is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence may be considered substantively unreasonable when the district court . . . fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor" under 18 U.S.C. § 3553(a). *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "The defendant shoulders the burden of showing substantive unreasonableness." *United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011).

Because Baker's sentence was within his applicable Guidelines range, we presume that the sentence is substantively reasonable. *See United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022). But Baker argues that he has rebutted this presumption because the district court did not give the "proper weight" to relevant factors and "ignored" "information critical to that weighing." Specifically, Baker contends that the court did not sufficiently consider and weigh the evidence that he had presented about the legalization of recreational marijuana in the United States and the recent trends in sentencing on marijuana convictions, about his personal history and characteristics, about the time that he had already served in state prison for possession of the guns at issue in this case, and about the need to avoid sentencing disparities among codefendants.

"The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). To be sure, a sentence can be unreasonable if the district court fails to consider and explain its reasons for rejecting a defendant's nonfrivolous mitigation arguments. *See United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). But the court "need not engage in a formulaic point-by-point refutation" of those arguments. *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018).

Here, "[t]he [district] court did not 'simply select' what it viewed as 'an appropriate sentence,' . . . but rather explicitly considered many § 3553(a) factors." *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)). The court noted that it had "look[ed] at the mitigating factors," including that Baker's parents had been absent when he was growing up, that he had been "raised in an area of drug activity and gang violence," and that he had "witnessed [a] murder when he was 14 years old." These mitigating factors were how the court "justif[ied] a sentence at the lowest end of the range."

But the district court could not "justify a variance, given all of the aggravating factors." The court explained that those aggravating factors included that Baker "was the leader of his own drug trafficking organization," "laundered drug proceeds to hide his drug trafficking activities," and "conspired to rob an individual at a bar." Moreover, the court noted, law-enforcement officers executing warrants at In and Out Tires and at Baker's residence uncovered "firearms, [a] large quantity of marijuana, [a] mixture containing heroin and fentanyl, drug paraphernalia, high-end jewelry, [and] over $100,000 in money order receipts." And the court explained that Baker's arguments on sentencing disparities among codefendants failed because "[e]very one of those defendants was given a guidelines sentence range" and "[i]f there was a variance[,] it was simply to give the particular defendant the benefit of his plea agreement." Although the court did not "engage in a formulaic point-by-point refutation" regarding all of Baker's arguments, *see Sweeney*, 891 F.3d at 239, it analyzed Baker's arguments on the mitigating factors, weighed them against the aggravating factors, and applied a within-Guidelines sentence.

Finally, Baker challenges the district court's failure to grant him a downward departure, arguing that Criminal History Category IV overstates the seriousness of his criminal history.

But "[t]his court generally does 'not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *United States v. Johnson*, 553 F.3d 990, 999 (6th Cir. 2009) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)).

Here, the record reflects that the district court understood that it had the discretion to depart from the sentencing Guidelines range. It looked to "the totality of the criminal history" and concluded that Criminal History Category IV did not overstate the seriousness of Baker's offenses. Baker has not shown that the court abused its discretion in so concluding.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.